UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
Bridgeport Division

| | |
|---|---|
| In re | CHAPTER 11 |
| SIGG SWITZERLAND (USA), INC. | CASE NO. 11-51024 (AHWS) |
| Debtor. | |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT
TO BANKRUPTCY RULES 4001 AND 9014 AUTHORIZING THE DEBTOR TO
(A) OBTAIN POST-PETITION FINANCING PURSUANT TO
SECTIONS 105, 362, 363, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1),
AND 364(E) OF THE BANKRUPTCY CODE; (B) USE
CASH COLLATERAL OF GERBER FINANCE, INC. PURSUANT
TO SECTIONS 105, 362 AND 363 OF THE BANKRUPTCY CODE;
(C) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364
OF THE BANKRUPTCY CODE ; AND (D) SCHEDULING A FINAL HEARING**

To:   The Honorable Alan H.W. Shiff,
      United States Bankruptcy Judge

SIGG Switzerland (USA), Inc., debtor and debtor-in-possession, (the "Debtor" or "SIGG USA"), hereby files this motion ("Motion") for an order authorizing (i) the Debtor to obtain post-petition financing from the Debtor's pre-petition lender, Gerber Finance, Inc. ("Gerber") pursuant to Section 364(c) and (d); (ii) use of cash collateral of Gerber pursuant to Section 363; (iii) granting adequate protection to Gerber and Capacity LLC ("Capacity") with respect to their secured pre-petition claims; and (iv) scheduling a final hearing on this Motion.

In support thereof, the Debtor respectfully represents as follows:

1. On May 20, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its property and assets as debtor-in-possession.

## BACKGROUND INFORMATION

2. The Debtor is the exclusive distributor of SIGG aluminum water bottles in the United States. It has no other lines of business.

3. The Debtor purchases all its products from SIGG Switzerland AG ("Parent"). The Parent has been designing and manufacturing household goods for over 100 years. The SIGG brand is respected throughout the world. In 2005, the Parent incorporated the Debtor to serve as its distributor in the United States.

4. As of the Petition Date, the Debtor had assets, primarily inventory and receivables and employed nine people.

5. In 2009, certain groups publicly alleged that the Debtor had misrepresented the content of its water bottles and that the plastic liners contained trace amounts of bisphenol A ("BPA"). The Debtor disputed these claims.

6. As a result of the negative publicity the Debtor instituted a voluntary exchange program with its customers in 2009. Through extensive communications, the Debtor exchanged 306,371 water bottles at no cost to the customer. This action had a significant negative impact on the Debtor's financial condition.

7. Despite these voluntary efforts, in 2009 the Debtor was named in eight class action lawsuits. The complaints sounded in misrepresentation, breach of warranty and violation of consumer protection laws. No personal injury claims were asserted.

8. All class actions were transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Western District of Kentucky for coordinated pretrial proceedings. In re Sigg Switzerland (USA), Inc., Aluminum Bottles Marketing and Sales Practices Litigation, MDL No. 2137 (the "Class Action").

9. The Debtor has denied these allegations and has vigorously opposed class certification.

10. In 2009 sales of the debtor declined heavily due to the bad publicity and increased competition. In 2010 sales of the Debtor declined further to approximately $10,000,000. The Debtor has lost millions of dollars in each of the past two years as a result of decreased sales and an unsustainable cost structure. Essentially the Parent has been supplying the Debtor with product for which it has not been paid. The Debtor is unable to satisfy its creditors from future profits.

11. The Debtor and other members of the SIGG corporate group are seeking to restructure their affairs. The Debtor has significantly reduced its operating costs and its inventories. However, in its current situation, the Debtor is unable to find outside financing at reasonable costs.

12. The Debtor's exit strategy is to file a prompt motion pursuant to Section 363 of the Bankruptcy Code to sell substantially all of its assets to SIGG Products Canada, Inc., an entity under the control of the Parent, subject to higher and

better bids under procedures to be approved by the Bankruptcy Court. This transaction would accelerate the recent consolidation of the U.S. and Canadian operations and result in significant operational savings. The Debtor is negotiating the sale with the goal of providing some dividend to unsecured creditors after payment of the secured debt.

Pre-Petition Facility

13. The Debtor is a party to a certain Loan and Security Agreement dated October 10, 2007 as amended with Gerber (the "Existing Loan Agreement"). The obligations under the loan agreement are secured by a first priority security interest in substantially all of the Debtor's assets and properties. As of the Petition Date, the Debtor owes approximately $2.0 million under the Existing Loan Agreement (the "Pre-Petition Obligations").

14. For some period of time before the Petition Date, the Debtor's borrowing base included the inventory and receivables of an affiliate, SIGG Canada Products, Inc. ("SIGG Canada"). During this period, the Debtor advanced funds to SIGG Canada for its operations. However, Gerber's collections of the receivables of SIGG Canada exceeded the Debtor's advances. SIGG Canada guaranteed the Debtor's obligations under the Pre-Petition Loan Agreement and provided security to Gerber for its guaranty.

15. In addition, the Pre-Petition Obligations are guaranteed by SIGG Switzerland AG, the Debtor's parent and by a limited guaranty by the investor in the parent.

16. As of the Petition Date, the Debtor was out of formula.

17. In the normal course of its operations, the Debtor utilizes the services of Capacity to fulfill its orders from Capacity's warehouse in New Jersey. Capacity has a warehouseman's lien for some or all of its claim that is subordinate to that of Gerber.

*The Post-Petition Financing*

18. In order to continue its operations pending a sale of its assets, the Debtor requires additional financing in order to provide products to satisfy its customers. The timing of the collection of the Debtor's accounts receivable is sufficiently uncertain that, absent post-petition financing, the Debtor may not be able to satisfy its obligations to its employees and vendors in a timely manner.

19. The Debtor and Gerber have negotiated a certain Ratification and Amendment pursuant to which Gerber will extend credit under the terms and conditions set forth (the "Ratification Agreement") is attached as Exhibit A.

20. The Ratification Agreement provides (a) for borrowing up to a maximum amount of $2.3 million; (b) borrowing is permitted under a more favorable inventory formula than under the Existing Loan Agreement; (c) the Canadian assets are no longer part of the borrowing base; (d) the Debtor will not be providing funds for operations of SIGG Canada as it had done pre-petition; (e) Post-Petition Obligations are secured by a first priority security interest in all of the Debtor's assets; (f) for a superpriority administrative expense under Section 364(b); and (g) such other terms as are described in this Motion and in the attached DIP Agreement.

21. The Debtor has concluded based upon discussions with several lenders and other parties in interest and its familiarity with the financing market in general that the Debtor would be unable to obtain unsecured credit allowable only as an

administered expense under Bankruptcy Code Section 364(a) or (b) solely on the basis of a super priority or a junior lien under Bankruptcy Code Section 364c(1), (2) or (3). The Debtor believes that any potential lender would, at least, require first priority liens on substantially all of its assets.

22. The terms of the DIP Agreement and the Interim Order were negotiated in good faith and at arms length. The Debtor believes that they are fair and reasonable under the circumstances.

## RELIEF REQUESTED

23. Pursuant to Sections 363 and 364(c) and (d) of the Bankruptcy Code, the Debtor seeks authority to enter into a DIP Financing agreement with Gerber. The essential points of the financing are as follows:

| | |
|---|---|
| Borrower: | Debtor |
| Maximum Loan Limit: | $2,300,000 |
| Interest Rate: | Prime plus 5.25%. The interest rate may increase if the term is extended. |
| Maturity: | 3 months from effective date. |
| Lending Formula: | 85% against eligible accounts as such term is defined in the Existing Loan Agreement and up to 45% against eligible inventory as such term is defined in the Existing Loan Agreement. The limit in the "Pre-Petition Loan Agreement" for inventory availability of 85% of accounts availability is removed. |
| | Only the assets of the borrower will be included in the borrowing base formula. The assets of SIGG Products Canada, Inc. will be excluded in determining the borrowing formula. |
| Security and Priority: | To secure all obligations of Borrower under the DIP Facility ("Post-Petition Obligation"), Lender will receive, |

|  |  |
|---|---|
|  | pursuant to Section 364(c) (2) and Section 364(d) of the Bankruptcy Code, through the final DIP Agreement and Bankruptcy Court orders acceptable to Lender and Prepetition Lender, a fully perfected first priority security interest in all of the existing and after acquired real and personal, tangible and intangible, assets of Borrower, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, patents, tradenames, trademarks, copyrights, intellectual property, general intangibles, avoidance actions under Section 549, investment property, supporting obligations, letter of credit rights, commercial tort claims, causes of action and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, whether existing or arising prior to or after the Petition Date (collectively, the "Collateral"). There shall also be a security interest and lien in favor of DIP Lender under Section 364(c)(3) of the Bankruptcy Code in property that is subject to a lien by any party other than DIP Lender or Prepetition Lender ("Post-Petition Collateral") (though not subject to any lien of Capacity). Such Post-Petition Collateral does not include Chapter 5 causes of action (other than those pursuant to Section 549 of the Bankruptcy Code, as recovered under Section 550 or 551 of the Bankruptcy Code). The foregoing liens shall be subject to the carveout described below. |
| <u>Cross Collateralization:</u> | The DIP Agreement provides that the proceeds of the Post-Petition Collateral will be applied to the Pre-Petition Obligations but only to the extent of the validity and priority of the Pre-Petition Security Interests. No other party-in-interest may challenge any of the foregoing, except within 15 days of entry of the Interim Order; provided that any official committee of unsecured creditors shall have 30 days from its appointment or 50 days after the Petition Date, whichever is earlier (without admission that the committee has standing to object.) (No party-in-interest shall challenge the indebtedness under or security or other terms of the DIP Facility.) |

| | |
|---|---|
| <u>Conditions</u>: | Motion to sell substantially all the assets of the Debtor's assets to a stalking horse bidder with completed asset purchase agreement and evidence satisfactory to DIP Lender and Pre-Petition Lender of such bidder's financial ability to consummate the sale to be filed no later than 14 days after the Petition Date. |
| | Motion regarding bidding procedures, authority to conduct the sale and authorization to pay proceeds to be filed within 7 days of the Petition Date. |
| | Approval by the Bankruptcy Court of the bidding procedures motion within 21 days of the filing of the bidding procedures motion. The auction is to be conducted within 60 days of the Petition Date. |
| | Bankruptcy Court enters an order approving Section 363 Sale within 60 days after the Petition Date. |
| <u>Consummation of the Sale</u>: | Payment in full to the Lender and the Pre-Petition Lender within 25 days of the entry of the order approving the sale. |
| <u>Events of Default</u>: | The following are included among Events of Default: |
| | The appointment of a trustee or examiner. |
| | The dismissal or conversion of the Chapter 11 case, or granting relief from the automatic stay in favor of third parties except as contemplated by the definitive DIP Facility documentation. |
| | A post-petition judgment liability or event that will, in DIP Lender's or Pre-Petition Lender's judgment, significantly impair Borrower's financial condition, operations or ability to perform under the DIP Facility, the Adequate Protection Obligations or any Bankruptcy Court order. |
| | Any violation or breach of any representation, warranty or covenant. |
| <u>Relief from Stay</u>: | Upon 3 days' notice with an opportunity for a hearing; automatic perfection of post-petition liens. |

<table>
<tr><td>Additional Terms:</td><td>Other additional terms are contained in the Ratification attached hereto, and in the proposed Interim Financing Order, which is also attached. In the event of any conflict between the descriptions of the DIP Facility in this Motion and in the DIP Financing Agreement, the DIP Financing Agreement controls.</td></tr>
</table>

24.  There are no provisions in the DIP Agreement relating (a) to the Debtor's right to file a plan or the timetable for doing so (though there are terms that condition what such a plan may provide for); or (b) the granting of a lien on any Chapter 5 cause of action, except for any claim under Section 549. There is a release in the Ratification Agreement of Gerber, (see Section 8); the release as it affects the rights of parties-in-interest (other than the Debtor) to object to such release and otherwise object to the pre-petition debt of Gerber or its secured and perfected status is governed by a challenge period set forth in the proposed interim order. Also, the Ratification Agreement adopts and ratifies the Debtor's obligations under the Existing Loan Agreement, including Section 25 of the Existing Loan Agreement by which the Debtor indemnifies Gerber and its affiliates against, inter alia, claims and causes of action arising from Gerber's lending relationship with the Debtor, including during the post-Petition Date period.

*Cash Collateral and Adequate Protection For Pre-Petition Lender*

25.  The Debtor also seeks authority to use cash collateral for the term in the Ratification Agreement pursuant to Bankruptcy Code Section 363. Even with the Ratification Agreement, the Debtor needs access to Gerber's cash collateral in order to effectively continue to operate its business. The Debtor would, however, only use this cash collateral to pay down the pre-Petition Date debt of Gerber, as adequate

protection for the pre-petition obligations to Gerber. The DIP Financing Agreement provides that the proceeds of Post-Petition loans will be used for the expenses of the Debtor, subject to its budget. In addition the interim and final financing orders provide a superpriority administrative expense claim pursuant to 364(c). The Debtor also requests that the financing orders include specific findings regarding, and unequivocally afford to Gerber, the protections of Section 364(a) of the Bankruptcy Code.

*Further Adequate Protection*

26. Gerber receives adequate protection of its pre-petition liens by, among other things, replacement liens in post-petition property of the Debtor, to the same extent and validity as its liens in pre-petition property, as well as a priority claim under Section 507(b) of the Bankruptcy Code.

*Adequate Protection to Capacity*

27. Capacity receives adequate protection of its pre-petition liens by replacement liens on post-petition inventory to the same extent, priority and validity as its prepetition claims. Such liens are subordinate in all respects to the Gerber liens. Capacity will also receive a superpriority expense claim pursuant to Section 364 subordinate to the superpriority claims of Gerber.

*Post-Petition Interest*

28. Gerber is over-secured on its debt as of the Petition Date, though the extent of such over-security is not sufficient to provide Gerber, as pre-Petition Date lender and secured party, with adequate protection. However, on account of such over-security, Gerber has the right to post-petition interest and fees and charges on

its pre-petition debt. Payment of such amounts are provided for in the attached, proposed interim financing order, and shall also be provided for in the final financing order.

*Interim Relief*

29. Debtor seeks the entry of an interim order attached hereto to borrow up to $500,000 (subject to the requirements of the Ratification Agreement and the Interim financing order) in accordance with the attached budget pending a final hearing on this motion.

30. The relief requested in the interim order is necessary to avoid immediate and irreparable harm to the estate pending the final hearing. Between now and the date of the final hearing, the Debtor will have a payroll that is due on May 27, 2011. In addition, the Debtor is in need of funds to pay post-petition vendors.

31. The proposed interim financing order contains a number of provisions not expressly described herein, which the Debtor seeks and which affect the rights of the Debtor, its estate and other parties-in-interest. The final financing order that the Debtor seeks shall have terms and provisions at least as protective of Gerber as those set forth in the attached, proposed interim financing order.

*Notice*

32. The Debtor requests that notice of this Motion and a hearing on the Final Order be made on (i) the twenty largest unsecured creditors; (ii) counsel to any Committee appointed in the case (if any); (iii) the Internal Revenue Service; (iv) Gerber; (v) Capacity; and (vi) any other party who has requested notice.

33. The Debtor requests that a final hearing on this Motion be scheduled at least 15 days and no later than 25 days from the Petition Date.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order:

(a) authorizing the Debtor to obtain post-petition financing under the terms set forth in the Interim and Final Orders;

(b) authorizing use of cash collateral under the terms set forth in the Interim and Final Order;

(c) granting adequate protection as set forth in the Interim and Final Order;

(d) otherwise granting all relief set forth in the Interim and Final Orders;

(e) scheduling a final hearing on the Motion; and

(f) granting such other and further relief as is just and proper.

Dated at Hartford, Connecticut, this 20th day of May, 2011.

DEBTOR - SIGG SWITZERLAND (USA), INC.

By _____/s/ Robert A. White_____
Robert A. White - ct08277
rwhite@murthalaw.com
Robert E. Kaelin - ct11631
rkaelin@murthalaw.com
Meredith C. Burns – ct27544
mcburns@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:  860-240-6000
Facsimile:   860-240-6150
Its Attorneys

-12-

2286765v1