UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
Bridgeport Division

|  |  |  |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | |
| SIGG SWITZERLAND (USA), INC. | : | CASE NO. 11-51024 (AHWS) |
| | : | |
| Debtor. | : | |
| | : | MAY 27, 2011 |

**MOTION FOR AN ORDER AUTHORIZING AND APPROVING (A) THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS OTHER
THAN IN THE ORDINARY COURSE OF BUSINESS, FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS
PURSUANT TO 11 U.S.C. §§ 105, 363(b) and (f) AND FEDERAL
RULE OF BANKRUPTCY PROCEDURE 6004; (B) ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES OF PROPERTY PURSUANT TO 11 U.S.C. § 365(a)
AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6006; AND (C)
<u>DISBURSEMENT OF PROCEEDS TO SECURED PARTIES</u>**

To:    The Honorable Alan H.W. Shiff,
       United States Bankruptcy Judge

SIGG Switzerland (USA), Inc., as Debtor and Debtor-in-Possession (the

"Debtor"), by and through its undersigned counsel, hereby respectfully moves the

Court for an order authorizing the Debtor (a) to sell property of the estate other than in

the ordinary course of business free and clear of liens, claims, encumbrances and

interests pursuant to 11 U.S.C. §§ 105, 363(b) and (f) and Rule 6004 of the Federal

Rules of Bankruptcy Procedure; (b) to assume and assign certain executory contracts

and unexpired leases pursuant to 11 U.S.C. § 365(a) and Rule 6006 of the Federal Rules of Bankruptcy Procedure; and (c) to disburse the proceeds of the Sale to secured parties.

In support thereof, the Debtor respectfully represents as follows:

## I.   **INTRODUCTION**

1.   On May 20, 2011 (the "Petition Date"), the Debtor filed with this Court a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code").  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its property and assets as debtor-in-possession.  No trustee, examiner or committee has been appointed in this Chapter 11 case.

2.   The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Debtor's Chapter 11 case and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.   The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105, 363(b) and (f), 365(a) and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

## II.   **BACKGROUND INFORMATION**

4.   The Debtor is the exclusive distributor of SIGG aluminum water bottles in the United States.  It has no other lines of business.

5.      The Debtor purchases all its products from SIGG Switzerland AG ("Parent").  The Parent has been designing and manufacturing household goods for over 100 years.  The SIGG brand is respected throughout the world.  In 2005, the Parent incorporated the Debtor to serve as its distributor in the United States.

6.      As of the Petition Date, the Debtor had assets, primarily inventory and receivables and employed nine people.  The Debtor's schedules list assets of liabilities of $2,252,909 and liabilities of $13,067,935.

7.      In 2009 sales of the Debtor declined heavily due to negative publicity and increased competition.  In 2010 sales of the Debtor had declined to approximately $10,000,000.  The Debtor has lost millions of dollars in each of the past two years as a result of decreased sales and an unsustainable cost structure.  Essentially the Parent has been supplying the Debtor with product for which it has not been paid.  The Debtor is unable to satisfy its creditors from future profits.

8.      The Debtor and other members of the SIGG corporate group are seeking to restructure their affairs.  The Debtor's U.S. sales have stabilized and the Debtor has significantly reduced its operating costs.  However, in its current situation, the Debtor is unable to find outside financing at reasonable costs.  The Debtor needed to file its petition in order to address accumulated debt and litigation matters.

9.      The Debtor's exit strategy is to file a prompt motion pursuant to Section 363 of the Bankruptcy Code to sell substantially all of its assets to SIGG Products Canada, Inc., an entity under the control of the Parent, subject to higher and better bids under procedures to be approved by the Bankruptcy Court.  This transaction would accelerate the recent consolidation of the U.S. and Canadian

operations and result in significant operational savings.  The Debtor is negotiating the

sale with the goal of providing some dividend to unsecured creditors after payment of

the secured debt.

10.     On May 21, 2011, the Debtor filed its Motion to Approve Orders

Authorizing Use of Cash Collateral and Borrowing Pursuant to 11 U.S.C. §§ 363(b)(1)

and 363(c), 364(c) and 364(d) With Priority Over Administrative Expenses and

Secured by Liens on Property of the Estate (the "DIP Financing Motion"), authorizing

the Debtor to enter into post-petition financing with Gerber Finance, Inc. ("Lender").

Based upon certain pre-petition loans, as of the Petition Date, the total pre-petition

indebtedness due to Lender was approximately $2.0 million, plus interest and costs,

which is secured by blanket liens on all of the Debtor's assets.  Capacity LLC

("Capacity") also holds a warehouseman's lien on Debtor's inventory.  Capacity's claim

is approximately $160,000.

11.     The Debtor is out of formula with its Lender.  Nonetheless the Debtor

has been able to negotiate the ability to obtain additional borrowing from Lender in

accordance with a budget.  The lending agreement provides that a Sale be approved

on or before July 19, 2011.

## III.     **RELIEF REQUESTED**

12.     By this Motion, the Debtor seeks the entry of an order authorizing the

Debtor to sell substantially all of its assets (the "Assets") to SIGG Canada Products,

Inc. (the "Proposed Buyer") in accordance with the terms of an Asset Purchase

Agreement (the "Stalking Horse Agreement") which will be filed with the Court by the

hearing on the Bidding Procedures Motion defined below. Attached as Exhibit 1 is a Letter of Intent (the "LOI") which describes the essential terms of the sale of the Proposed Buyer, an affiliate of the Debtor, or to such other entity or entities which shall submit a bid deemed by the Court to be the highest and best offer (an "Alternate Buyer").

13.    As set forth in the Stalking Horse Agreement, the Proposed Buyer proposes to purchase substantially all of the assets of the Debtor and accept the assignment of certain executory contracts to which the Debtor is a party (collectively, the "Assets"). In consideration for the purchase of the Assets, the Proposed Buyer shall pay cash of $2,350,000 as adjusted for inventory and receivable levels at Closing in accordance with the Stalking Horse Agreement. The Proposed Buyer has also obtained the Agreement of the Parent to subordinate its claim of $9.3 million to those of other unsecured creditors but only if Proposed Buyer is the successful bidder.

14.    The Debtor submits that the Stalking Horse Agreement is fair to the Debtor and its creditors, and contains provisions that are common and customary for such transactions. The Debtor has determined, in the exercise of its business judgment, and in the context of the severe constraints facing the Debtor, the requirements of the Financing Order and the need for the Debtor to preserve its value as a going concern through a prompt sale of the Assets, that entering into the form of Stalking Horse Agreement is in the best interest of the Debtor, its creditors and the estate.

15.    The Proposed Buyer is a related party to the Debtor. Both are wholly owned subsidiaries of SIGG Switzerland AG ("Parent"). The Debtor's sole director is

also a director of the Proposed Buyer and is a director/officer of the Parent.  The
Debtor's president is also president of the Proposed Buyer.  The Proposed Buyer is
represented by counsel.

16.     In order to insure that the sale process is fair, the Debtor has undertaken
the following measures in the Bidding Procedures Motion and otherwise:  (a) the
Debtor has retained The Rusconi Company ("Rusconi") to market the Debtors assets
and has given Rusconi complete discretion to market the assets to strategic and
financial buyers as he deems appropriate as set forth in the application to retain
Rusconi; (b) provided for an auction in open court; (c) given bidders determined by the
Debtor to be financially unqualified to appear and be heard before the Court; (d) given
bidders who are not given a license by the Parent to market SIGG products at
comparable pricing and volume levels to appear and be heard before the Court; and
(e) has filed its schedules and statement of financial affairs promptly;

17.     The Debtor proposes to sell the Assets to the Proposed Buyer, or to an
Alternate Buyer, other than in the ordinary course of business free and clear of liens,
claims, encumbrances and interests pursuant to 11 U.S.C. §§ 105, 363(b) and (f) and
Rule 6004 of the Federal Rules of Bankruptcy Procedure.  The only liens on the
Debtor's assets are those of (i) Gerber Finance, Inc. ("Lender") on all pre-and post
petition assets; and (ii) Capacity LLC which holds a warehouseman's lien on the
Debtor's inventory.  The proceeds are sufficient to satisfy the claims of both secured
and unsecured parties.

18.     The Assets shall be sold pursuant to the procedures to be established by
the Court (the "Bidding Procedures") pursuant to the Motion of Debtor and Debtor-in-

Possession For an Order (i) Authorizing and Approving Form of Stalking Horse

Agreement, (ii) Authorizing and Approving Bidding Procedures, (iii) Authorizing and

Approving Procedures Governing the Assumption and Assignment of Executory

Contracts, (iv) Authorizing and Approving Break-Up Fee, (v) Scheduling an Auction,

(vi) Approving Form and Manner of Notice Thereof, and (vii) Granting Relief, All in

Connection With the Sale of Substantially All of the Debtor's Assets dated May 27,

2011 (the "Bidding Procedures Motion").

19.     In connection therewith and pursuant to 11 U.S.C. § 365, the Debtor

seeks to assume, cure all defaults and assign to the Proposed Buyer or Alternate

Buyer, as applicable, certain executory contracts and leases more specifically

identified in the schedules that will be annexed to the Stalking Horse Agreement.

CREDITORS AND PARTIES IN INTEREST ARE ADVISED TO REVIEW THE
STALKING HORSE AGREEMENT FOR THE COMPLETE TERMS AND
CONDITIONS UPON WHICH THE ASSETS WILL BE SOLD.  THE SALE SHALL BE
SUBJECT TO THE PROCEDURES OUTLINED IN THE BIDDING PROCEDURES
ORDER.

## IV.     BASIS FOR RELIEF

A.     Motion to Sell Property Of The Estate Other Than In
       The Ordinary Course Of Business Free And Clear Of
       Any Liens, Claims, Encumbrances or Interests

20.     Pursuant to 11 U.S.C. §§ 363(b) and (f), a debtor-in-possession, after

notice and a hearing, may sell property of the estate other than in the ordinary course

of business free and clear of any liens, claims, encumbrances or interests.

21.     The Debtor submits that approval of the relief sought herein is in the

best interests of the estates.  The proposed Sale seeks to obtain the going concern

value of the Assets which is believed to be significantly greater than the amount that

would be received as the result of a "piece meal" sale of the Assets after a cessation of the Debtor's business operations.  The proposed Sale also seeks to preserve employment for as many of the Debtor's current employees as possible.

22.    The Debtor cannot reasonably expect that the Lender will continue to make advances beyond the formula in the financing agreement indefinitely.  The proposed DIP Agreement requires that the Debtor obtain approval by the Court of a sale on or before July 19, 2011.

23.    Before the Petition Date, the Debtor considered various alternatives designated to maximize value for the estate.  After careful consideration of these options and cognizant of its fiduciary duty to creditors, management has determined that the sale of the Debtor's business as a going concern is the only viable alternative for the estate at this time and represents a sound exercise of the Debtor's business judgment.

24.    The Debtor submits that the consideration to be paid by the Proposed Buyer or Alternate Buyer, as applicable, represents the fair market value for the Debtor's business.  Moreover, the Sale to the Proposed Buyer or Alternate Buyer is subject to the Bidding Procedures Order which sets forth the means for obtaining the highest and best offer for the Assets in order to maximize value for the estates.

25.    Based upon the foregoing, the Debtors believe that the proposed sale of the Assets satisfies the standard set forth for the sale of substantially all of the assets of a Chapter 11 debtor "outside" a plan of reorganization as set forth in the Second Circuit decision of In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983).  The Lionel decision requires that a debtor articulate a sound business by way of a motion

pursuant to 11 U.S.C. § 363 rather than through a plan of reorganization or

liquidation.  The factors set forth by the Second Circuit Court of Appeals in the <u>Lionel</u>

decision weigh in favor of this Court approving the Sale in this case:

> a.    There is no substantial likelihood that a plan of reorganization can be proposed and confirmed in the near future.  This is due in large part to the fact that the Debtor requires overadvances from Gerber to continue to operate.  Furthermore, under the DIP Financing order, a sale must be approved by July 19, 2011.

> b.    The going concern value of the Assets is significantly greater than the Debtor could otherwise obtain from a "piece meal" sale of the Assets in a liquidation.  Further, the consideration to be obtained from the Sale as proposed represents fair market value for the Assets and remains subject to higher and better offers which the Debtor is soliciting.  Moreover, the agreement of the Parent to subordinate its claim, which is 85% of the unsecured claims pool, is a significant benefit to other unsecured creditor.

> c.    It is anticipated that the Proposed Buyer will offer continued employment to virtually all of the Debtor's current employees.

> d.    There is little probability that the Debtor can revitalize its existing businesses given the lack of time and resources presently available to do so.  As such, the probability that a liquidating plan will be filed is a virtual certainty.

26.    The foregoing factors thus militate in favor of this Court approving the

proposed Sale in accordance with the analysis set forth in <u>Lionel</u>.  Moreover, it is

respectfully submitted that the sale should be authorized where the value received is

the highest and best available and the Debtor has established that the assets will lose

value if not disposed of promptly.  <u>See</u> <u>In re Chateaugay Corporation</u>, 973 F.2d 141

(2d Cir. 1982).

27.    Pursuant to Local Rule of Bankruptcy Procedure 6004-1(a), an appraisal

is ordinarily required prior to any sale not in the ordinary course of business unless

the trustee or debtor-in-possession determines that such appraisal is not warranted under the facts of the case.

28.     In light of the short time frame sought for the sale of the Assets, the costs and delay associated with the procurement of an appraisal, and the marketing of the Assets undertaken by the Debtor subsequent to the Petition Date, it is respectfully submitted that sufficient cause exists to dispense with the need for an appraisal at this time.

B.     The Proposed Buyer Is A Good Faith Purchaser And Is Entitled To The Protections Of Bankruptcy Code Section 363(m)

29.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

30.     For the reasons stated in paragraph 16 of this Motion, the Proposed Buyer is purchasing the assets in good faith and without collusion with other potential bidders.  Accordingly, the Debtors respectfully request that the Court make a finding that the Proposed Buyer is entitled to the protections of 11 U.S.C. § 363(m) and (n).

C.    The Sale Should Be Free And Clear Of Liens, Claims, Encumbrance
And Interests

31.    Under Section 363(f) of the Bankruptcy Code, a debtor-in-possession

may sell property free and clear of any lien, claim, or interest in such property if,

among other things:

a.    applicable nonbankruptcy law permits sale of such property free
and clear of such interest;

b.    such entity consents;

c.    such interest is a lien and the price at which such property is sole
is greater than all liens on such property;

d.    such interest is a bona fide dispute; or

e.    such entity could be compelled in a legal or equitable proceeding,
to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

32.    Gerber holds a lien on all of the Debtor's assets (except certain Chapter

5 claims).  Its prepetition claim was approximately $2,000,000.  At the time of the

proposed closing on July 29, 2011, the Debtor's budget reflects Gerber will be owed

approximately $2.1-2.2 million dollars.

33.    Capacity holds a warehouseman's lien as the Debtor's inventory to

secured a prepetition claim of approximately $160,000.

34.    The Debtor must satisfy any one of its five requirements to permit the

sale of the Assets to be free and clear of liens, claims, encumbrances, pledges,

mortgages, security interests, charges, options, and other interests (collectively, the "Interests").

35.    Section 1129(b)(2)(A) of the Bankruptcy Code specifically allows a debtor to sell property subject to a lien free and clear of such lien if such lien attaches to the net proceeds of the sale, subject to any claims and defenses the debtor may possess with respect thereto.  The Debtor submits that any Interests in the Assets sold immediately attach to the net proceeds of the Sale in these cases.

36.    The Lender and Capacity have actively supported the sale process provided that they be paid in full.  The proceeds of the Sale will be sufficient to satisfy their claims in full.

37.    Based upon the following foregoing, the sale of the Assets, free and clear of liens, claims, encumbrances and interests, should be approved under section 363(f) of the Bankruptcy Code.

D.    The Court Should Waive Or Reduce The Ten Day Stay Set Forth In Fed.R.Bankr.P. 6004(g)

38.    Pursuant to Bankruptcy Rule 6004(g), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 10 days after entry of the order.  Fed. R. Bankr. P. 6004(g).  The purpose of Bankruptcy Rule 6004(g) is to provide sufficient time for an objecting party to appeal before the order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(g).

39.     Collier suggests that the 10 day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier of Bankruptcy 15th Ed. Rev., ¶ 6064.09 (L. King, 15th rev. ed. 1988).  Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

40.     To preserve the value of the Assets, it is critical that the Debtor close the Sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtor respectfully requests that the Court waive the 10-day stay period to the minimum amount of time needed by any objecting party to file its appeal to allow the Sale to close as provided pursuant to the terms of the APA.

E.      Assumption And Assignment Of Executory Contracts And Unexpired Leases.

41.     Pursuant to 11 U.S.C. § 365(a), a debtor-in-possession, subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor.  Further, and pursuant to 11 U.S.C. § 365(b)(1), a debtor-in-possession may not assume an executory contract or unexpired lease unless the debtor-in-possession cures, or provides adequate assurance that the debtor-in-possession will promptly cure, any default which may exist thereunder and compensates or provides adequate assurance that the debtor-in-possession will promptly compensate a party, other than the debtor to such contract, for any pecuniary loss resulting from such default and provide for adequate assurance of future performance under the contract.

42. The Debtor is a party to several executory contracts and unexpired lease of both real and personal property. A condition of the sale to the Proposed Buyers in the assumption by the Proposed Buyer of certain of the Debtor's executory contracts and unexpired leases of both real and personal property. The Debtor will assume and assign the contract with Capacity as provided for in the Bidding Procedures Motion and the Stalking Horse Agreement.

F. Disbursement Of Proceeds To Secured Parties.

43. The proposed sale order authorizes the Debtor to pay to proceeds of the sale to Lender in full satisfaction of its secured debt. The Interim and Final Orders authorizing post-petition financing so provide. However, such orders also give creditors until June 20 and a Committee until July 9, 2011 to file an adversary proceeding to contest Lender's liens. The approval of the sale does not occur until July 19, 2011, 10 days after the end of the challenge period. Accordingly, if no challenge has been filed, the Debtor should be able to pay Lender the amount of its debt at Closing.

44. Although Capacity holds a warehouseman's lien it also is a party to an executory contract with the Debtor which the Proposed Buyer wishes to assume. Accordingly, the Debtor may pay Capacity at closing if the court approves the assumption pursuant to Section 365.

WHEREFORE the Debtor respectfully requests that the Court (a) enter an order substantially in the form to be submitted on or before the hearing on the Bidding Procedures Motion approving the sale of the assets to the Proposed Buyer or an

-14-

Alternate Buyer free and clear of liens, claims and encumbrances; (b) authorizing the

assumption of executory contracts and leases; (c) authorizing disbursements of

proceeds to Gerber and Capacity in satisfaction of their secured claims; and (d) such

other and further relief as is just.

Dated at Hartford, Connecticut, this 27th day of May, 2011.

DEBTOR - SIGG SWITZERLAND
(USA), INC.

By /s/ Robert A. White
    Robert A. White - ct08277
    rwhite@murthalaw.com
    Robert E. Kaelin - ct11631
    rkaelin@murthalaw.com
    Meredith C. Burns – ct27544
    mcburns@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:  860-240-6000
Facsimile:   860-240-6150
Its Attorneys

2292720v1

May 27, 2011

SIGG Switzerland (USA), Inc.            The Rusconi Company
1177 High Ridge Road                    185 Asylum Street
Stamford, Connecticut 06905             Hartford, Connecticut 06103
ATTN: Robert Dewar, President           ATTN: Dennis Rusconi

    Re:   Letter of Intent Between SIGG Products Canada, Inc. and SIGG
          Switzerland (USA), Inc.

Dear Messrs. Dewar and Rusconi:

    This letter of intent is intended to be a nonbinding outline of terms under which
SIGG Products Canada Inc. ("Buyer,") would acquire certain assets of SIGG
Switzerland (USA), Inc. ("Seller") free of all liens, claims and encumbrances.

1.    Assets to be Acquired: All inventory, receivables, equipment, customer lists and
related customer information, customer contracts and purchase orders, deposits,
customer deposits, accounts, prepaid expenses, rights to proceeds of insurance,
tax refunds, credits, furniture and fixtures, machinery and equipment (including
computer equipment), warranties and guaranties, intercompany claims,
software, supplies and other tangible personal property, all telephone numbers,
fax numbers, e-mail addresses, domain names (including my Sigg), trademarks
(including my Sigg and Simply Ecological), trade names, websites, and all other
intellectual property including, without limitation, all applications, licenses,
instructions, marketing materials, logos, designs, confidential information and
documentation and records pertaining thereto ("Purchased Assets"). Buyer is
only interested in purchasing all (rather than just a part) of the Seller's assets in
totality.   Notwithstanding the foregoing, the Purchased Assets shall not include
any assets that are not necessary for the future conduct of the business, as
determined by Buyer.

2.    Excluded Assets: Cash and causes of action under Chapter 5 of the United
States Bankruptcy Code.

3.    Purchase Price: Cash of **$ 2,350,000** USD, adjusted at Closing based upon
Accounts Receivables and Net Inventory as of the Closing Date, not subject to
any financing conditions but subject to future developments of assets ("Purchase
Price"). This Purchase Price is based on:



May 27, 2011
Page 2

- a.) $750,231.08 USD which equals the difference between 100% of the accounts receivable as of May 20, 2011 ($ 892,231.08 USD) and a receivable reserve for doubtful accounts in the amount of $142,000 USD, all subject to adjustment based on the accounts receivable as of the Closing Date ("Accounts Receivable"); and

- b.) $1,281,836 USD, which constitutes 90 % of $1,424,251.66 USD, the value of the Net Inventory as of May 20, 2011, subject to adjustment based upon Net Inventory as of the Closing Date; and

- c.) $157,933 USD for the equipment, customer lists and related customer contracts, purchase orders, telephone numbers, fax numbers, domain names (my Sigg) trademarks (my Sigg, Simply Ecological) and all other Purchased Assets (other than the Accounts Receivable and Net Inventory); and

- d.) $160,000 USD, constituting the cost to bring all amounts due under the Assumed Contracts current ('Cure Costs").

The final Purchase Price shall be determined on the Closing Date based on the value of the Accounts Receivable (at 100% less the receivable reserve) as of the Closing Date and the Net Inventory value (at 90%) as of the Closing Date, plus the amounts set forth in Subparagraphs 3(c) and (d) above. For purposes hereof, "Net Inventory" shall mean all inventory net of accruals.

4.   Payment of Purchase Price:  At the Closing, Buyer (a) will cause SIGG Switzerland AG ("Parent") (and Parent will agree) to release the cash collateral account with Gerber Finance, Inc. ("Gerber") in the amount of $650,000 plus interest to be applied to Seller's obligations to Gerber; (b) shall, at its option, either pay or assume the Cure Costs; and (c) shall pay the balance of the Purchase Price (net of the amounts set forth in Subparagraphs 4(a) and (b) above, in cash or certified funds.

5.   Subordination:  Buyer will cause Parent (and Parent will agree) to subordinate payment of its claims against Seller in the amount of $9,292,877.89 ("Parent Obligation") to those of other unsecured creditors; provided that Parent will not subordinate its claims with respect to the Parent Obligation if Buyer is not the successful bidder and the sale of the Purchased Assets to Buyer is not consummated.

6.   Employee Obligations:  Subject to Subparagraph 9b below, Buyer will hire all of Seller's employees and will assume the liability for unpaid payroll and payroll tax



May 27, 2011
Page 3

> (arising after the Closing) and for accrued vacation and other obligations due
> employees in the ordinary course of Seller's business.

7.   No Assumed Liabilities:   Buyer will not assume any of Seller's obligations,
including but not limited to accounts payable, expense, debt, personal property
lease, estate lease, contract, product liability, tort claim, or other liability or
obligation of Seller except for the Cure Costs and otherwise as specifically
provided herein.

8.   Contracts:  Buyer will assume the contracts and leases set forth on **Schedule A**
attached hereto and made a part hereof ("Assumed Contracts"), which Assumed
Contracts Seller shall have assumed in bankruptcy and shall assign to Buyer at
Closing, and will pay the cure amount as additional consideration.

9.   Conditions to Closing:  The obligation for Buyer to complete the acquisition will
be subject to the following conditions:

   a.   The Bankruptcy Court shall have approved an order approving the sale to
the Buyer in form and substance satisfactory to Buyer.  Such order shall
state, among other things, that (i) the sale is free and clear of all liens,
claims and interests; (ii) Buyer is not a successor of the Seller ; and
(iii) the Asset Purchase Agreement was negotiated in good faith and Buyer
is entitled to protections under Section 363(m);

   b.   That the following individuals (Malvar Ceasar, Mark Amler, Roselyn
Duque, David Hepworth, Larry Jansons, Maria Nazarro, Shane Sheldon,
Bridget McGovern) enter into employment agreements with Buyer on
terms which are acceptable to Buyer;

   c.   Buyer will have completed its due diligence investigation on or before May
31, 2011 and will be satisfied in Buyer's sole discretion, with the results of
the investigation;

   d.   The Parties will have entered into a definitive binding asset purchase
agreement and other documents for the acquisition on terms satisfactory
to Buyer and Seller ("Acquisition Agreements") on or before June 10, 2011
subject to Court approval which Acquisition Agreements shall contain such
representations, warranties, covenants, closing conditions, indemnities for
losses and expenses incurred as a result of any breaches and such other
provisions as are customary for transactions to this nature;

   e.   Seller shall have delivered the Acquisition Agreements to which it is a
Party;



May 27, 2011
Page 4

      f.    There will have been no material adverse change in the assets, liabilities, business, condition (financial or otherwise) or prospects of the Seller;

      g.    Buyer receives tax clearance letters from each State where Seller files or is required to file a state income tax or a sales tax return; and

      i.    No litigation shall be pending or threatened seeking an injunction against the transaction or alleging that the Buyer is or may become liable for any liability or obligation of the Seller.

10.    <u>Due Diligence</u>: Buyer will have the right to conduct customary business, legal and financial due diligence with respect to the Seller. Seller will cooperate with Buyer and provide Buyer and its agents with access to Seller and information with respect to Seller as Buyer may reasonably request.

11.    <u>Publicity</u>: Any press releases, announcements or public statements pertaining to the acquisition will be only by mutual consent and in a mutually agreeable form.

12.    <u>Closing Date</u>: The closing date is the date mutually agreed upon on or after the satisfaction or waiver of the conditions of closing but not later than July 29, 2011 ("Closing Date").

13.    <u>Bankruptcy Provisions</u>:

      a.    Buyer agrees that sale is subject to higher and better bids and approval of the Court.

      b.    Seller and Buyer agree to use best efforts to file papers and obtain court orders on the following timetable:

          - On or before May 27, 2011 Seller will file a motion to sell and motion to approve bidding procedures, authority to conduct the sale and authorization to pay proceeds in full to DIP Lender and Prepetition Lender filed by Seller, to be acceptable to DIP Lender and Prepetition Lender ("Motions"). This Letter of Intent will be attached to the Motions.

          - On or before June 10, 2011 Seller will file with the Court the completed asset purchase agreement.

          - Approval by Bankruptcy Court of the Bidding Procedures Motion by June 17, 2011 (approval acceptable to DIP Lender and Prepetition Lender).



May 27, 2011
Page 5

> - The Bankruptcy Court enters an order approving the Section 363 sale, which order is entered on or before July 19, 2011 (order must be acceptable to DIP Lender and Prepetition Lender). Such sale proceeds shall be sufficient to pay all allowed obligations to Gerber Finance, Inc. in full.
>
> - Consummation of the sale and payment in full, indefeasibly to Lender and Prepetition Lender within 20 days of the entry of the order approving the sale.

   c.   The necessary pleadings and Acquisition Agreements shall provide for a Break-Up Fee/Expense Reimbursement payable to Buyer if Buyer is not the successful bidder or if the sale of the Purchased Assets to Buyer does not occur within the period of time set forth in the Acquisition Agreements, through no fault of Buyer, in an amount equal to the lesser of (i) the actual costs incurred by Buyer in connection with the transactions contemplated by the Acquisition Agreements or this Letter of Intent, or (ii) $50,000 USD.

14. Pre-Closing Covenant: The Seller will continue to operate the business of Seller consistent with past practices and will use commercially reasonable efforts to maintain its customers and employees.

15. Binding Provisions: In recognition of the significant time, effort and costs to be borne by the parties in pursuing this transaction and in consideration of their mutual undertakings as to the matters described herein upon execution of counterparts of this Letter, the following lettered Subparagraphs will constitute the legally binding and enforceable agreement of the Buyer and Seller:

   (a)   Access. The Seller will afford the Buyer's employees, accounts and other authorized representatives all reasonable opportunity and access to conduct due diligence with respect to the assets, liabilities, contracts, operations, and Business of the Seller before the Closing.

   (b)   Costs. The Buyer and the Seller will each be solely responsible for and bear all of its own expenses, including expenses of legal counsel, accountants, and other advisors, incurred at any time in connection with pursuing or consummating the Agreement and the transactions contemplated thereby.

   (c)   Public Disclosure. After the execution of this letter, the Parties shall not disclose nor publicly announce the expected acquisition of the assets of the Seller by the Buyer or the terms of such acquisition to anyone other



May 27, 2011
Page 6

> than its accountants, attorneys, lenders, owners and such other parties as
> are mutually agreed upon by Buyer and Seller.

16.   Binding Provisions: Except for the provisions of Paragraph 15 above, which are
      binding and enforceable, the Buyer and Seller intend that no legal rights or
      obligations will come into existence between them and in respect of the
      acquisition unless and until the Acquisition Agreements are dully executed and
      delivered and that, in such event, the parties respective legal rights and
      obligations will then be only those set forth in the Acquisition Agreements.
      Subject to the continuing binding effect of the above provisions, no party will have
      any liability or obligation to the other, nor any rights against the others, if the
      Acquisition Agreements are not executed and delivered.

17.   Expiration: This Letter of Intent shall expire at 5:00 p.m. on June 1, 2011, if it is
      not executed by the Seller and delivered to Buyer prior thereto. Time is of the
      essence with respect to all deadlines herein.

18.   Governing Law: This Letter of Intent shall be governed by and construed in
      accordance with the laws of the State of Connecticut.

If the Seller is in agreement with the forgoing, please execute this Letter of Intent in the
space provided below.

                                        Very truly yours,
                                        SIGG Products Canada, Inc.


                                        By: Hinder Walter
                                        Its: Director


Agreed to and accepted by:              Agreed to (as to Paragraphs:
                                        4 and 5 hereof) by:

SIGG Switzerland (USA), Inc.            SIGG Switzerland AG


By: Robert Dewar                        By: Hinder Walter
Its: President                          Its: CEO

## SCHEDULE A
### (Assumed Contracts)

Third Party Warehousing and Order Fulfillment Agreement with Capacity LLC, 1112 Corporate Road, North Brunswick, New Jersey 08902.

