UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
Bridgeport Division

|  |  |  |
|---|---|---|
| In re | : | CHAPTER 11 |
| SIGG SWITZERLAND (USA), INC. | : | CASE NO. 11-51024 (AHWS) |
| Debtor. | : |  |

**ORDER (i) AUTHORIZING AND APPROVING FORM OF STALKING HORSE
AGREEMENT, (ii) AUTHORIZING AND APPROVING BIDDING PROCEDURES, (iii)
AUTHORIZING AND APPROVING PROCEDURES GOVERNING THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS, (iv)
AUTHORIZING AND APPROVING BREAK-UP FEE (v) SCHEDULING AN
AUCTION, (vi) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND
(vii) GRANTING RELATED RELIEF, ALL IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

Upon the Motion of Debtor SIGG Switzerland (USA) Debtor and Debtor-in-

Possession for an Order (i) Authorizing and Approving Form of Stalking Horse

Agreement, (ii) Authorizing and Approving Bidding Procedures, (iii) Authorizing and

Approving Procedures Governing the Assumption and Assignment of Executory

Contracts, (iv) Authorizing and Approving Break-Up Fee, (v) Scheduling an Auction,

(vi) Approving the Form and Manner of Notice Thereof, and (vii) Granting Related

Relief, all in Connection with the Sale of Substantially All of the Debtor's Assets (the

"Bidding Procedures Motion") (Doc ID. No. 41), and any objections to the Bidding

Procedures Motion having been overruled or resolved, and good and sufficient cause

appearing therefore and the court having found that sufficient notice having been given, it is hereby

ORDERED:

## A.    General

1.    The Bidding Procedures Motion is granted as set forth herein.

## B.    Approval of the Form of Stalking Horse Agreement

2.    The form *only* of the Stalking Horse Agreement (and not the substance thereof) (the "Stalking Horse Agreement") between the Debtor and SIGG Canada Products, Inc. (the "Proposed Buyer") is approved.  The approval of any sale of the Assets of the Debtor (including any sale to the Proposed Buyer under the Stalking Horse Agreement) shall be approved, if at all, at the Sale Hearing as scheduled below.

3.    Notwithstanding any agreement by SIGG Switzerland AG (the "Parent") to subordinate its right to payment on its general unsecured claim (the "Parent Claim") to the payment of all other allowed general unsecured claims so long as the Parent's bid is the winning bid (the "Parent Subordination"), or the Court's approval of these Bidding Procedures, the Committee and the Office of the United States Trustee expressly reserves, retains, and does not waive any of its rights to object to the terms, conditions, limitations or effect of the Parent Subordination at any hearing on approval of the proposed Stalking Horse Agreement, Sale Motion or any other bid.  Such reservation of rights shall include, without limitation, the right of the Committee to assert that the Parent Claim is subject in whole or in part to disallowance, recharacterization or subordination.

-2-

**C.    Approval of the Procedures Governing the Assumption and Assignment
        of Executory Contracts and Unexpired Leases**

4.    a.    **Cure Amount Objection Deadline**

i.    Within 3 business days of entry of this Order, the Debtor shall, via overnight courier service, transmit a notice to all counterparties to executory contracts and unexpired leases, which notice shall identify the (a) counter-party to such executory contract and unexpired lease, (b) contain a brief description of the subject contract or lease and (c) reflect the Debtor's calculation of any cure amount, if any, which may be due to such counterparty in the event such contract or unexpired lease is to be assumed pursuant to the provisions of 11 U.S.C. Section § 365 (the "Cure Amount").

ii.    Counter-parties to executory contracts or unexpired leases must file with the Court and serve on (i) Debtor's counsel, Murtha Cullina LLP, 185 Asylum Street, Hartford, CT 06103, Attention:  Robert A. White; and (ii) Proposed Buyers' counsel, Zeisler & Zeisler P.C., 558 Clinton Avenue, Bridgeport, CT 06605, Attention: James Berman, any objection to the Debtor's calculation of the Cure Amount, or to the Debtor's assumption or assignment of such contract or lease such that any such objections are filed and are served by 5:00 p.m., July 14, 2011.  Failure to file an objection to the Cure Amount shall be deemed a waiver to object to the Debtor's Cure Amount.

## D.     Approval of the Bidding Procedures

5.     The Bidding Procedures attached hereto as Exhibit 1 are approved and shall govern the scheduling and conduct of the Auction (as hereinafter defined) and the scheduling of the hearing to approve the sale of the Assets.

6.     Gerber Finance, Inc. is permitted to credit bid pursuant to Section 363(k) of the Code.

## E.     Scheduling of an Auction and Sale Hearing

7.     Within 3 business days of entry of this Order, the Debtor shall serve via first class mail, Motion for an Order (A) Authorizing and Approving the Sale of Substantially All of the Debtor's Assets Other Than In The Ordinary Course of Business, Free and Clear Of Liens, Claims, Encumbrances and Interests Pursuant To 11 U.S.C. §§ 105, 363(b) and (f) and Federal Rule of Bankruptcy Procedure 6004; (B) to Assume and Assign Certain Executory Contracts and Unexpired Leases of Property Pursuant to 11 U.S.C. § 365(a) and Federal Rule of Bankruptcy Procedure 6006; and (C) authorize the disbursement of proceeds to secured creditors (the "Sale Motion") on (i) all creditors and parties in interest, (ii) parties in interest who have filed appearances in these proceedings, and (iii) all potential purchasers who have expressed an interest in acquiring the assets of the Debtors, along with a notice of hearing which sets forth that the Bankruptcy Court will conduct a hearing to consider the Sale Motion, and any objections thereto on July 19, 2011, at 2:00 p.m., at the United States Bankruptcy Court, District of Connecticut, Bridgeport Division, 915 Lafayette Boulevard, Bridgeport, CT 06604, with objections to be filed and served such that they are in hand receipt of Debtor's counsel, Murtha Cullina LLP,

-4-

185 Asylum Street, Hartford, CT 06103, Attention: Robert A. White; Proposed

Buyers' counsel, Zeisler & Zeisler P.C., 558 Clinton Avenue, Bridgeport, CT 06605,

Attention: James Berman, on or before July 15, 2011 at 5:00 p.m.

On or before July 11, 2011 at 5:00 p.m. the Committee shall have the right to

extend the deadlines by filing a Notice of Extension with the Court on notice to

counsel to the Debtor, the Proposed Buyer and the Office of the United States

Trustee herein as follows: Bid Deadline – August 9 at 5:00 p.m.; Auction on

August 10, 2011 at 10:00 a.m.; and Sale Hearing on August 10, 2011 at 2:00 p.m or

such other time as permits a closing on or before September 12, 2011. By agreement

of the Parties the Committee will not seek any further extensions of the deadlines.

Dated at Bridgeport, Connecticut, this 20th day of June, 2011.

By the Court

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge

2406933v1

-5-

## SCHEDULE A

## BIDDING PROCEDURES

On May 20, 2011, SIGG Switzerland (USA), Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). These bidding procedures set forth the process by which the Debtor is authorized to conduct a sale by auction (the "Auction") of the Assets (as defined herein).

1.    Assets

The Assets consist of substantially all of the Assets of the Debtor, as more particularly described in the asset purchase agreement (the "Stalking Horse Agreement") dated as of June 3, 2011 between the Debtor and SIGG Canada Products, Inc. (the "Proposed Buyer").[1]

2.    Stalking Horse Bid

Pursuant to the provisions of the Stalking Horse Agreement, the Proposed Buyer has agreed to purchase the Assets, in consideration for which the Proposed Bidder shall (a) pay $317,933 in cash at closing plus 90% of inventory and 100% of accounts receivable as defined in the Stalking Horse Agreement; (b) cause $650,000 plus interest of SIGG Switzerland AG currently posted as security for Debtor's obligation to Gerber Finance, Inc. ("Lender") to be applied to Debtor's obligation to Lender; and (c) cause SIGG Switzerland AG to subordinate its right to payment on its unsecured claim to allowed claims of unsecured creditors so long as its bid is the winning bid.

3.    Due Diligence

Upon the execution of a confidentiality agreement in form and substance satisfactory to the Debtor, any party desiring to submit a Qualifying Bid, as defined herein, may be granted access to relevant business and financial information of the Debtor, including a Confidential Offering Memorandum to enable such party to evaluate the Assets for the sole purpose of submitting a Qualifying Bid. Interested parties may contact Dennis Rusconi of The Rusconi Company ("Rusconi") whose address is in paragraph 7 below. The Debtor shall have no obligation to provide information to any party that, in the business judgment of Rusconi, after discussion with the Committee's professionals, lacks the ability to consummate a purchase of the Assets as contemplated by these Bidding Procedures.

---

[1]    A copy of the Stalking Horse Agreement is available upon request to Robert A. White, counsel to the Debtor, whose contact information is set forth in paragraph 7 hereof.

4.    License

        The Debtor sells SIGG product with the consent of the holder of the trademark,
SIGG Switzerland AG ("Licensor").  Any potential bidder must, at a minimum, continue
existing volume levels and pricing as with the Debtor.  The terms of a License and
Supply Agreement with Licensor are set forth in the Confidential Offering Memorandum.
If Licensor rejects any potential bidder as unqualified to sell its product, it must so notify
the potential bidder in writing of the reasons therefore on or before the Sale Hearing.
Any such rejected bidder has standing to appear before the Bankruptcy Court to argue
that its rejection was in bad faith.

5.    Qualifying Bids

        A "Qualifying Bid" is a written offer that:

        (a)    provides that the offeror offers to purchase all or
substantially all of the Asset upon terms and conditions substantially as
set forth in the Stalking Horse Agreement, provided that the Parent does
not agree to subordinate its unsecured claims in the event that any
bidder for the Assets other than the Proposed Buyer is the winning
bidder;

        (b)    results in a value to the estate that the Court finds is more
than the "Minimum Bid," which is the sum of (i) the Stalking Horse Bid;
and (ii) $50,000 (each, a "Qualifying Bid Amount");

        (c)    does not provide for any payment to the offeror of a break-
up fee, expense reimbursement or similar type of fee, expense
reimbursement or similar type of fee or payment;

        (d)    is accompanied by a duly executed form of Stalking Horse
Agreement;

        (e)    is accompanied by a deposit in the amount of $230,000,
payable in immediately available funds (the "Deposit"), to be held by the
Debtor's counsel to secure the Qualifying Bid, which Deposit, subject to
the provisions of paragraphs 12(b) and 13 of these Bidding Procedures,
shall be refunded to the offeror if the offeror's Qualifying Bid is not
accepted by the Debtor and the Court as the highest and best offer for
the Assets;

        (f)    identifies with particularity each executory contract and
unexpired lease to be assumed and assigned to the offeror at closing;

        (g)    contains financial and other information sufficient to enable
Rusconi in its business judgment after consultation with the Committee's
professionals, to evaluate and confirm the offeror's financial wherewithal

2

to consummate the purchase of the Assets, including evidence
reasonably satisfactory to Rusconi that the offeror has financial
resources available and sufficient to finance the purchase of the Assets,
and financial and other information sufficient to provide adequate
assurance of future performance of any executory contract under § 365
of the Bankruptcy Code;

(h)    does not contain any due diligence, financing or other
contingencies of any kind;

(i)    fully discloses the identity of the offeror or any entity
participating in the competing offer;

(j)    provides that the offeror consents to the jurisdiction of the
Bankruptcy Court; and

(k)    provides for a closing of the purchase and sale of the
Assets no later than July 29, 2011, unless extended by the Court.

The Stalking Horse Bid is deemed to be a "Qualifying Bid."

6.    Bid Deadline

All Qualified Bids are due no later than July 15, 2011 at 5:00 p.m. and shall be
delivered in writing to the following parties by e-mail or facsimile:

(a)    to the Debtor:

Rob Dewar
SIGG Switzerland (USA), Inc.
1177 High Ridge Road
Stamford, CT 06905
Facsimile: 905-267-3813
E-mail: rob.dewar@sigg.com

(b)    to the Debtor's counsel:

Robert A. White, Esq.
Murtha Cullina LLP
CityPlace I-185 Asylum Street
Hartford, CT 06103
Facsimile: 860-240-6150
E-mail: rwhite@murthalaw.com

(c)     to the Proposed Buyer's counsel:

> James Berman, Esq.
> Zeisler & Zeisler, P.C.
> 558 Clinton Avenue
> Bridgeport, CT 06605-0186
> Facsimile:  203-367-9678
> E-mail:  jberman@zeislaw.com

(d)     to The Rusconi Company

> Dennis J. Rusconi
> The Rusconi Company
> CityPlace II-185 Asylum Street
> Hartford, CT 06103
> Facsimile: 860-275-6236
> E-mail:  drusco@msn.com

## 7.     Determination of Qualifying Bids

Within two (2) business days after the Bid Deadline, Rusconi and the Committee shall review each bid for the Assets and determine, in their business judgment, whether such bid constitutes a Qualifying Bid, as defined herein.  Rusconi shall notify each party that submits an offer whether its offer is a Qualified Bid.  Any bidder deemed not qualified by the Committee may nonetheless appear at the Auction.  At the Auction, the Debtor, the Lender or any other party in interest may oppose the designation of a bidder, other than the Stalking Horse Bidder, as a Qualified Bidder.  The Court will determine whether such bidder is a Qualified Bidder.

## 8.     Participation in the Auction; Scheduling of the Auction

(a)     The Auction shall be held on July 19, 2011 at 10:00 a.m. at the United States Bankruptcy Court, 915 Lafayette Boulevard, Bridgeport, Connecticut. Only the Stalking Horse Bidder and any party that submits a Qualified Bid (a "Qualified Bidder") may participate in the Auction. The Stalking Horse Bidder is deemed to be a Qualified Bidder for purposes hereof.  If the Debtor does not receive any bid by the deadline established herein, Rusconi shall cancel the Auction and accept the Stalking Horse Bid on behalf of the Debtor.

(b)     The following procedures shall govern the Auction which shall be held in open court

> (i)     The Proposed Buyer and each Qualifying Bidder shall appear in person or through an authorized representative;
>
> (ii)    No party other than the Proposed Buyer and each Qualifying Bidder shall be entitled to submit bids for the Assets at the Auction;

4

(iii)   Bidding at the Auction shall commence at the amount of the highest Qualifying Bid received by the Debtor. Each successive bid must be at least $50,000 higher than the outstanding highest bid;

(iv)   The Court shall determine whether a bid constitutes a higher and better offer than other bids received for the Assets. The Court shall be entitled to consider the amount of the purchase price, including any credit bid, the financial wherewithal of the bidder and the overall benefit to the Debtor's estate;

(v)   The Proposed Buyer and any Qualifying Bidder may make modifications to the Stalking Horse Agreement during the Auction, provided that the Court reserves the right to determine whether such modifications impact whether such bid represents the highest and best offer for the Assets;

(vi)   The Court shall conduct the Auction until the Court determines in its judgment that it has received the highest and best offer for the Assets; and

(vii)   The Court may establish, by announcement at the Auction, such modified or additional bidding procedures as the Court deem appropriate based on the circumstances, provided that such modifications or changes shall not materially alter the bidding procedures set forth herein.

## 9.   Lender Reservation of Rights

Gerber Finance, Inc. ("Lender"), the secured lender to the Debtor, and/or its assignee, may submit a credit bid for the Assets up to the full amount of the Lender's claim in accordance with Section 363(k) of the Bankruptcy Code.

## 10.   Identification of Prevailing Bidder; Court Approval

At the conclusion of the Auction, the Court shall announce the identity of the party submitting the highest and best offer for the Assets (the "Prevailing Bid"). Such Prevailing Bid shall be subject to approval by the Bankruptcy Court at the Sale Hearing.

## 11.   Sale Hearing

The hearing to approve the sale of the Assets shall be held before the Honorable Alan H.W. Shiff at the United States Bankruptcy Court for the District of Connecticut, 915 Lafayette Boulevard, Bridgeport, Connecticut at 2:00 p.m. on July 19, 2011, or at such time thereafter as counsel may be heard, or at such other time as the Bankruptcy Court may establish.

## 12.    Failure to Consummate Purchase

(a)    If for any reason the party who submitted the Prevailing Bid fails to consummate the purchase of the Assets, the Court shall designate the next best offer as the Prevailing Bid, and the Debtor shall consummate the closing of the purchase of the Assets, provided that the Proposed buyer shall have no obligation to keep open or honor the Stalking Horse Bid after the completion of the Auction and determination of the Prevailing Bid.

(b)    If for any reason a Qualifying Bidder whose offer is selected as the Prevailing Bid shall fail to consummate the purchase of the Assets, the Deposit submitted by such Qualifying Bidder shall be forfeited to the Debtor as liquidated damages.

## 13.    Return of Deposit

Except as provided in Paragraph 12(b) hereof, all Deposits shall be returned to the unsuccessful Qualifying Bidders within three (3) business days after the completion of the Auction.

## 14.    Jurisdiction of the Bankruptcy Court

(a)    The Bankruptcy Court shall have jurisdiction to hear any matters that may arise from or relate to the Bidding Procedures or the sale of the Assets.

(b)    If the Proposed Buyer is not a party who submits the Prevailing Bid, the Proposed Buyer shall have standing to object to the sale of the Assets.

2406882v1

6